IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:
SCOTT L. MIELENTZ                              Case No. 16-14111-AMC
                                               Chapter 7

    Debtor,

---

UNITED STATES OF AMERICA,

    Plaintiff,                              Adv. Pro. No. 16-_____

    v.

SCOTT L. MIELENTZ,

    Defendant.

**COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

COMES NOW the United States of America, for the Social Security Administration ("SSA"), and through its counsel, United States Attorney Zane David Memeger, and Special Assistant United States Attorney, Timothy Reiley, and hereby files its Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A).

**I.      PARTIES, JURISDICTION, AND VENUE**

1. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determination as to dischargeability of particular debt(s)) and (O) (other proceedings) and seeks a determination that indebtedness is not dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) (non-dischargeability for money debts obtained by "false pretenses, a false representation, or actual fraud").

2. This Court has jurisdiction over this matter under the provisions of 28 U.S.C. § 1334 (Bankruptcy Cases and Proceedings) and 28 U.S.C. § 157(a) (referral of case from district court to bankruptcy judges).

3. Venue is appropriate in the Eastern District of Pennsylvania under 28 U.S.C. § 1409 (Venue of proceedings arising under Title 11 or arising in or related to cases under Title 11).

4. Plaintiff is the United States of America on behalf of the SSA ("Plaintiff" or "United States").

5. The Debtor-Defendant is Scott L. Mielentz ("Debtor-Defendant"), an individual residing within the Eastern District of Pennsylvania.

## II.   PROCEDURAL HISTORY

6. Debtor-Defendant filed a Petition for Relief under Chapter 7 of 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") on or about June 8, 2016.  See Dkt. No. 1.

7. On or about June 8, 2016, Debtor also filed his bankruptcy schedules wherein Debtor-Defendant listed SSA as an unsecured priority creditor to whom he owed a debt of $29,562.00 for "overpayment of benefits."  See Dkt. No. 1, Schedule E/F at 26.

## III.   STATUTORY FRAMEWORK

8. The Social Security Act (the "Act") defines disability as an inability to engage in any substantial gainful activity ("SGA") due to a medically determinable impairment which lasts for a continuous period of not less than 12 months.  42 U.S.C. § 423(a), (d)(1)(A), (e); 20 C.F.R. § 404.1505(a).  To meet this definition, and thus be initially eligible for benefits, an individual must have an impairment that makes him "unable to do his past

relevant work or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505(a) (citations omitted).[1]

9. SGA "[i]nvolves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

10. Work may be SGA "even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a).

11. A recipient of benefits under the Act (a "Recipient") who was properly entitled to benefits may work and still receive benefits under certain circumstances. A Recipient may test his ability to work during a trial work period. See 20 C.F.R. § 404.1592.

12. During a trial work period, a Recipient may perform services over a nine-month period, irrespective of whether those nine months are consecutive. See 42 U.S.C. § 422(c)(4); see also 20 C.F.R. § 404.1592(a). However, a Recipient is not entitled to a trial work period if he performs SGA within one year of his alleged onset of disability.

13. A non-blind Recipient presumptively engages in SGA if his monthly income exceeds the following amounts during the following years:

| Year | Amount |
|------|--------|
| 2014 | $1070  |
| 2015 | $1090  |

See SSA Official Website, http://www.ssa.gov/oact/cola/sga.html (last visited on October 4, 2016).

---

[1] The Commissioner engages in a five-step sequential evaluation when making a disability determination where she considers, in sequence, whether a claimant: (1) worked during the alleged period of disability; (2) had at least one severe impairment; (3) had an impairment that meets or equals the requirements of a listed impairment; (4) could return to his past relevant work in light of his residual functional capacity (RFC); and (5) if not, whether he could perform other work in the national economy given his RFC and vocational factors. 20 C.F.R. § 404.1520.

3

### IV. **DEBTOR-DEFENDANT RECEIVED NOTICE OF HIS REPORTING RESPONSIBILITIES.**

14. On or about May 30, 2014, Debtor-Defendant applied for Disability Insurance Benefits ("DIB") under the Act. See Exhibit A (Application).

15. In his application for disability benefits, Debtor-Defendant alleged that he "became unable to work because of my disabling condition on January 1, 2014." See Exhibit A at 1.

16. Debtor-Defendant's DIB application contained his reporting responsibilities and instructions on how to report any changes. Specifically, Debtor-Defendant was advised to report if he "return[s] to work (as an employee or self-employed) *regardless of the amount of earnings*." See Exhibit A at 5 (emphasis added); see also 20 C.F.R. § 404.1588(a) (providing that a Social Security disability benefits recipient must promptly inform SSA if his condition improves, he returns to work, he increases the amount of his work, or his earnings increase).

17. Debtor-Defendant was further advised how to report changes and that "FAILURE TO REPORT MAY RESULT IN OVERPAYMENTS THAT MUST BE REPAID, AND IN POSSIBLE MONETARY PENALTIES." See Exhibit A at 5 (emphasis in original).

18. In the Application, Debtor-Defendant further provided, "I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment, or both" and affirmed that all information given in connection with his claim was true. See Exhibit A at 2.

19. On September 30, 2014, SSA sent Debtor-Defendant a Notice of Award, which indicated that Debtor-Defendant was entitled to DIB beginning June, 2014. See Exhibit B (Notice of Award Dated September 30, 2014). The notice advised Debtor-Defendant that SSA "based [its] decision on information you gave us" and "[f]or this reason, it is important that you report changes to us right away." See Exhibit B at 2.

20. The Notice of Award also included a pamphlet "What You Need to Know When You Get Social Security Disability Benefit." See id. at 2; Exhibit C (Pamphlet – "What You Need to Know When You Get Social Security Disability Benefit"). The Notice of Award directed Debtor-Defendant to, "[b]e sure to read the parts of the pamphlet that tell you what to do if you go to work or your health improves." See Exhibit B at 2.

21. The pamphlet instructed Debtor-Defendant to "notify us promptly by phone, mail or in person whenever a change occurs that could affect your benefits." See Exhibit C at 11. The pamphlet further advised that Debtor-Defendant "should tell [SSA] if you take a job or become self-employed, *no matter how little you earn*." See Exhibit C at 12 (emphasis added). [2]

### V. DEBTOR-DEFENDANT IS OVERPAID BECAUSE HE RETURNED TO WORK SHORTLY AFTER HIS ALLEGED ONSET OF DISABILITY AND FAILED TO PROMPTLY ADVISE SSA IN ACCORDANCE WITH HIS REPORTING RESPONSIBILITIES.

22. Debtor-Defendant was overpaid $29,562.00 on account of the period from June 2014 through September 2015. He returned to SGA level work within one year of his January 1, 2014 alleged onset of disability and failed to inform SSA about his work

---

[2] Plaintiff has a bachelor's degree in industrial technology, and has performed past relevant work at the skilled level in the IT industry.

5

activity. SSA earnings records show that following his May 30, 2014 DIB application, Debtor-Defendant earned an additional $17,962.61 in 2014 during the same period he alleged he was unable to work. See Exhibit D at 1 (FICA earnings sheet).

23. Specifically, Debtor-Defendant earned approximately $3,000.00 while employed for Lehigh G.I.T., Inc. during the 3rd quarter of 2014 (July through September 2014). Following his September 30, 2014 Notice of Award and reminder to report work, Debtor-Defendant earned an additional $12,400.00 from Nesco Service Company during the 4th quarter of 2014 (October through December 2014). See Exhibit E at 1 (quarterly earnings report).

24. In 2015, Debtor-Defendant earned a total of $51,150.00 while employed by Nesco Resource Company, earning $12,200.00 in the first quarter of 2015, $12,000.00 in the second quarter, $12,950.00 in the third quarter, and $14,000.00 in the fourth quarter. See Exhibit E at 1.

25. Debtor-Defendant did not report these wages to SSA. See Exhibit F (Declaration of Jay D'Ambrosio).

## VI.   **DEBTOR-DEFENDANT MISREPRESENTED HIS WORK ACTIVITY DURING A REVIEW BY THE AGENCY.**

26. In December 2014, SSA advised Debtor-Defendant that his disability claim was being reviewed by the Pennsylvania Bureau of Disability Determination.

27. During this review, Debtor-Defendant materially misrepresented his employment. Among other things, Debtor-Defendant reported to a consultative examiner during the course of this review that his current vocational status was not employed; and that he most recently worked as a computer engineer approximately five years earlier.

28. Contrary to his representation, SSA records demonstrate that Debtor-Defendant returned to work for Nesco in late 2014 and consistently earned wages above the SGA level in late 2014 and throughout 2015, including the time of his evaluation.

29. Because Debtor-Defendant returned to SGA level work within one year of his January 2014 alleged onset date and failed to advise SSA of his work activity, he was not entitled to DIB payments from June 2014 through September 2015. See 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."); see also Walton v. Barnhart, 535 U.S. 212 (2002) (durational requirement requires that the impairment remain at a disabling level of severity for at least twelve months). Due to his failure to promptly and accurately report his SGA in accordance with his reporting responsibilities, Debtor-Defendant received benefits that he was not entitled to from June 2014 through September 2015. Id.

30. Accordingly, SSA overpaid Debtor-Defendant benefits totaling approximately $29,562.00, to which he was not entitled (the "Overpayment"). See Exhibit G (Notice of Change in Benefits dated October 20, 2015).

31. Although advised of his right to appeal the overpayment determination (including the amount) as well as request waiver of the overpayment, see Exhibit G at p. 2, Debtor-Defendant did not do so.

## **COUNT ONE**

### **Exception from Discharge of Debt Owed by Debtor-Defendant to SSA Pursuant to 11 U.S.C. § 523(a)(2)(A)**

32. The United States of America re-alleges and incorporates by reference the above paragraphs 1 through 31 as though fully set forth herein.

33. At all relevant times, Debtor-Defendant had a duty to timely report his work activity and earnings to SSA.

34. Debtor-Defendant falsely and fraudulently failed to inform SSA that he engaged in SGA and earned income in an amount sufficient to constitute SGA.

35. Debtor-Defendant's failure to inform SSA that he engaged in SGA and earned income in an amount sufficient to constitute SGA was knowing and willful.

36. Debtor-Defendant's knowing and willful failure to inform SSA that he engaged in SGA and earned income in an amount sufficient to constitute SGA created a contrived and misleading understanding on the part of SSA as to Debtor-Defendant's entitlement to monthly DIB payments.

37. In fact, Debtor-Defendant was never entitled to DIB payments from June 2014 through September 2015 because he returned to SGA level work within one year of his alleged onset date.

38. The contrived and misleading understanding on the part of SSA as to Debtor-Defendant's entitlement to monthly DIB payments wrongfully induced SSA to advance monthly DIB payments in the approximate Overpayment amount of $29,562.00.

39. SSA has sustained a loss in the amount of the Overpayment, for which the proximate cause is Debtor-Defendant's false and fraudulent, knowing and willful failure to inform

      SSA that he engaged in SGA and earned income in an amount sufficient to constitute SGA, which created a contrived and misleading understanding on the part of SSA as to Debtor-Defendant's entitlement to monthly DIB and payments in the approximate Overpayment amount of $29,562.00.

40. Debtor-Defendant obtained the Overpayment from SSA by false pretenses, a false representation, and/or actual fraud.

41. Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, the remaining Overpayment of approximately $29,562.00 is a nondischargeable debt in the instant bankruptcy case.

**WHEREFORE**, the United States of America respectfully requests that this Honorable Court:

(1) Determine that the approximately $29,562.00 Overpayment owed by Debtor-Defendant to the United States of America, Social Security Administration, constitutes a non-dischargeable sum pursuant to 11 U.S.C. § 523(a)(2)(A);

(2) Enter judgment against Debtor-Defendant and in favor of the United States of America in the principal amount of approximately $29,562.00, plus interest at the judgment rate;

(3) Order that SSA may immediately setoff any current or future benefits that Debtor-Defendant may receive from SSA, which SSA may apply to satisfy the judgment without violating the automatic stay in this case or any other jurisdiction;

(4) Order that, if Debtor-Defendant should die prior to fully satisfying his debt to SSA, SSA shall have a claim against Debtor-Defendant's estate for any and all remaining amounts owed to SSA, and that SSA's claim will be given priority over other claims, pursuant to 31 U.S.C. § 3713, if there are insufficient assets in the estate to pay other claims;

(5) Order that, if Debtor-Defendant defaults on his repayment obligations, SSA reserves the right to pursue all legal means to collect the outstanding debt, including, but not limited to, placement into the Treasury Offset Program, Administrative Wage Garnishment, and any other legally available means for collection of the debt; and

(6) Award the United States of America such other relief as the Court may deem appropriate.

        Respectfully submitted for,

        THE UNITED STATES OF AMERICA

        ZANE DAVID MEMEGER
        United States Attorney

By: /s/ Timothy Reiley
    Timothy Reiley
    SPECIAL ASSISTANT
     UNITED STATES ATTORNEY
    Office of the General Counsel
    Social Security Administration
    P.O. Box 41777
    Philadelphia, PA 19101
    (215) 597-0948
    (215) 597-4662 (Fax)

Dated: October 24, 2016    Timothy.Reiley@ssa.gov

OF COUNSEL:

Nora Koch
  Regional Chief Counsel, Region III
  Office of the General Counsel
  Social Security Administration

Document      Page 11 of 11

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 24, 2016, I served a copy of the COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) on the following via CM/ECF, if they are a registered user, or otherwise by first-class mail:

Scott L. Mielentz
803 Washington Crossing Road
Newtown, PA  18940
*Debtor-Defendant*

Patricia M. Mayer
Waterman & Mayer, LLP
301 Oxford Valley Road, Suite 203B
Yardley, PA  19067
*Debtor's Attorney*

    /s/ Timothy Reiley
    Timothy Reiley
    Special Assistant United States Attorney