IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re : | : | Chapter 7 |
| **SCOTT L. MIELENTZ** | : | |
| Debtor. | : | Case No. 16-14111-amc |
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 16-376-amc |
| **SCOTT L. MIELENTZ** | | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Scott Mielentz, hereby files this Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. A discussed below, there are material issues of fact related to notice given to Plaintiff by Mr. Mielentz regarding his return to work, the Plaintiff's failure to document in anyway the notice provided by Mr. Mielentz, the Plaintiff's admitted "administrative error" which served as the true cause of the overpayment of benefits in this case and Defendant's actual intent. Accordingly, Plaintiff's motion should be denied.

**I.    Counterstatement of Facts:**

Mr. Mielentz has been employed in the field of information technology working as a computer technician, network system administrator and technology consultant for over 20 years. At some point beginning in 2010, he began experiencing difficulties working due to symptoms of PTSD, depression and herniated discs in his back. See Mielentz Affidavit, ¶ 4 and ¶ 7. Mr. Mielentz served as an Army Ranger in Laos during the late 1970's and suffers from

1

hallucinations, flashbacks and anxiety related to that time in the service. He has been treated continuously since 2010 for these conditions and suffers frequent periods of unemployment as a result of not being able to perform the tasks required of his jobs. In the years immediately prior to his application for disability in 2014, he had been employed in temporary positions as a computer technician through a company called CompuCom. See Work History Report p. 1, Mielentz Affidavit ¶ 2.

In early 2014, Mr. Mielentz became unemployed and his condition was preventing him from actively participating in daily tasks including paying bills, managing money, and preparing meals. See Function Report, pgs. 3-7, Third Party Function Report, pgs. 3-7. On May 30, 2014, Mr. Mielentz applied for social security benefits on the Social Security website. Mielentz Affidavit ¶ 5. After he completed the application, Mr. Mielentz provided a Work History Report and Function Report to the Social Security Office on or about June 17, 2014. Mielentz Affidavit, ¶ 6, Exhibit A to Mielentz Affidavit. Mr. Mielentz's, spouse with which he was living at the time, Jenny Lynn Santoro, also completed a Third Party Function Report on June 20, 2014 and submitted the same to the Social Security Office. Mielentz Affidavit ¶ 8, Exhibit B to Mielentz Affidavit.

After months of waiting for his disability application to be approved and in need of money to support himself, Mr. Mielentz took a temporary three week assignment as a computer technician in September 2014 with Lehigh G.I.T. Mielentz Affidavit  ¶ 9. In October 2014, still not knowing whether his application would be approved, Mr. Mielentz took another temporary position as a computer technician with NESCO. Mielentz Affidavit, ¶ 10. While he worked, Mr. Mielentz reported his income to the Government. See paystubs from Lehigh G.I.T and NESCO attached hereto as Exhibit B, See Quarterly Earnings Report attached hereto as

Exhibit C.  At all times when he worked, he was a w-2 employee.  He used his real name, correct social security number and correct address.  Federal income taxes and social security taxes were deducted from his pay.  At all times, he filed his annual federal income tax returns listing all of his income.  See Mielentz's 2014 and 2015 Federal Income Tax returns attached hereto as Exhibit  D.

The Social Security Administration publicly acknowledges that it receives employees' earnings information from the IRS and uses that information to create what is called a "Master Earnings File" on every worker in the United States.   According to the Social Security Administration,

> "Each year employers and the Internal Revenue Service (IRS) send information to the Social Security Administration (SSA) on the earnings of the U.S. working population. SSA uses this information to calculate benefit amounts for all types of beneficiaries, including retired workers, spouses, widow(er)s, children, and the disabled.  SSA stores this earnings information as the Master Earnings File (MEF) and because it comprises IRS tax data, it is subject to IRS disclosure rules. This file contains data derived from IRS Form W-2, quarterly earnings records, and annual income tax forms. These data include regular wages and salaries, tips, self-employment income, and deferred compensation (contributions or distributions).

See the attached article which appears on the Social Security Administration's website: https://www.ssa.gov/policy/docs/ssb/v69n3/v69n3p29.html, Anya Olsen and Russell Hudson, *Social Security Administration's Master Earnings File: Background Information,*" Social Security Bulletin, Vo. 68, No. 3, 2009, attached as Exhibit "E", p 1.

The Social Security Administration admits that it obtains earning information from multiple sources, including the employer as well as the employee. "SSA receives information on employee wages from the employer on Form W-2 Wage and Tax Statement and Form W-3 Transmittal of Wage and Tax Statements, and on self-employment earnings from IRS data files derived from Schedule SE and the unreported wages and tips line item on Form 1040, U.S. Individual Income Tax Return." See Exhibit E, p. 8.

The Social Security Administration admitted that it "receives information from employers and the IRS continuously; therefore the [Master Earnings File] is updated on a **weekly basis.**" (emphasis added) Exhibit E, p. 9. Moreover, the Social Security Administration has access to what is termed a "New Hire" report from which it can access quarterly earnings. Shirley Deposition, p. 26 line 23 – p 27 line 9.

In mid-October 2014, a Social Security disability payment was direct deposited into Mr. Mielentz's bank account. Mielentz Affidavit, ¶11, Mielentz Deposition, p28 line 22- p. 29 line 1. When Mr. Mielentz became aware of the deposit, he contacted the bank to find out the source of the deposit. Mielentz Deposition, p. 28, line 22 – p. 31, line 8, Mielentz Affidavit, ¶11. Since he did not manage the daily mail being received in his home or the banking activities, this was the first time he became aware that the disability application had been approved. Mielentz Deposition, p. 28, line 22 – p. 29, line 1, See Exhibit A to Mielentz Affidavit, Function Report, p. 3-7. On October 28, 2014, Mr. Mielentz called the telephone number listed on the Social Security website (800-772-1213) to notify the Administration that he had returned to work. See Exhibit D to Mielentz Affidavit, p. 1. Despite a recording indicating that calls "may be monitored for quality assurance purposes", the Government contends that it has no record of this call and that no phone log exists. See Plaintiff's Response to Request for Admissions No. 11,

4

pg 7 and Plaintiff's Response to Request for Admissions No. 14, pg 5, copies of which are attached hereto as Exhibit "F", Shirley Deposition, p.31, line16-23. However, Plaintiff admits that a protocol is in place which requires the individual's answering the 800 number calls to document the notice of work changes in the "ework" system and to send a "work receipt". See SSA Program Operations Manual System §DI 13010.020C and D attached hereto as Exhibit "G". Mr. Mielentz's phone records evidence the call being made to the 800 number listed on the Government's website for notifying the office of changes. It further details the time, date and length of the call, which is listed at 19 minutes. The only evidence provided by the Government regarding calls on October 28th is a report indicating that the average wait time on that day was 14.6 minutes. See Plaintiff's Supplementary Discovery Disclosure attached as Exhibit "H". No "ework" report or "work receipt" appeared to have been issued in this case. Interestingly, however, the Government does admit that it now records all phone calls to the 800 line routinely beginning in August 2016, about the same time that it was investigating Mr. Mielentz's case for non-dischargeability. Shirley Deposition, p. 20, line 7-8 and See Motion to Extend filed August 30, 2016 and attached has Exhibit "I".

    Mr. Mielentz does not dispute that he was overpaid benefits. However, documents produced in response to Defendant's discovery request indicate that an "administrative error" was the cause of the overpayment of benefits. See Letter dated May 28, 2015 received in response to Defendant's Request for Documents attached hereto as Exhibit "J". Moreover, the internal email written by Kathryn Ruch of the Fairless Hills Field Office to Daniel McClintock on May 26, 2015, indicates that the Government placed the case in pay status in error when more medical information had been requested. See copy of Ruch 5/26/15 email received from Plaintiff in response to Discovery Request attached as Exhibit "K". In addition, the Plaintiff's

file shows that a "Request for Corrective Action" dated November 10, 2014 was sent to the Harrisburg disability office for further medical evaluation and reports the error that was made when "the old DDE was copied and the case processed without consideration of the requested development", i.e. psychiatric evaluation. See Exhibit "L attached hereto. By the time that the Plaintiff cleared the error, gathered the necessary medical information per its procedures and changed the status of the claim to a denial, payments had been made through September 2015.

To the extent that the Plaintiff now claims it was Mr. Mielentz's fraudulent behavior that caused the overpayment, the facts simply do not support such a claim. Documentation has been provided to show that the Mr. Mielentz disclosed his work history, contacted Social Security to notify them of the return to work, and properly reported his income to his employers and the IRS throughout the period in question. The fact that the employees of the Social Security Administration failed to process the claim correctly internally leading to a full twelve months of improper payments and failed to follow procedure with regard to documenting the phone call made on October 28th mitigate against a finding of fraud on the part of the Debtor. In addition, as discussed below, there are enough material factual disputes at issue which preclude summary judgment.

**II. Discussion:**

   **A. Standard for Summary Judgment Standard**

Summary judgment should only be granted when the moving party demonstrates "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Jensen v. Pressler & Pressler,* 791 F.3d 413, 417 (3d Cir.2015).

Under Rule 56, the moving party is entitled to judgment as a matter of law if the court finds that the motion alleges facts which, if proven at trial, would require a directed verdict in

favor of the movant. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). If the moving party meets its initial burden, the responding party may not rest on the pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed2d 202 (1986).

The court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. A genuine issue of material fact is one in which the evidence is such that a reasonable fact finder could return a verdict for the non-moving party, *id.* at 248, 106 S.Ct. 2505, and thereby affect the outcome of the suit, *Jensen,* 791 F.3d at 417. The court must view the underlying facts and make all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995); *United States v. 717 South Woodward St.,* 2 F.3d 529, 533 (3d Cir.1993).

One of the Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs with their creditors and obtain a "fresh start," unburdened by the weight of preexisting debt. *See In re Cohn,* 54 F.3d 1108, 1113 (3d Cir.1995); *In re Marques,* 358 B.R. 188, 193 (Bankr.E.D.Pa.2006). Exceptions to discharge are construed strictly against creditors and liberally in favor of debtors. *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir.1995); *In re Glunk,* 455 B.R. 399, 415 (Bankr.E.D.Pa.2011). A creditor objecting to the dischargeability of an indebtedness bears the burden of proof. *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir.1995); *In re Stamou,* 2009 WL 1025161, *3 (Bankr.D.N.J. Mar. 19, 2009); *In re Marcet,* 352 B.R. 462, 468 (Bankr.N.D.Ill.2006). The burden of proof must be satisfied by a preponderance of the evidence.

7

*Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed. 2d 755 (1991); *In re August,* 448 B.R. 331, 357 (Bankr.E.D.Pa.2011) (citations omitted).

### B. Standards Regarding Dischargeability of Social Security Overpayments

In determining, whether debts for social security overpayments should be discharged, the bankruptcy courts apply the same standards as other cases under section 523(a)(2). Moreover, the standard for review of a Social Security Administration determination that a recipient was "not without fault" in receiving benefits to which he or she was not entitled is merely that there is "substantial evidence" to support the administrative decision. *See, Russell v. Heckler,* 814 F.2d 148, 149 (3rd Cir. 1987)(vacated on other grounds by *Bowen v. Russell*, 108 S.Ct. 2891 (1988). This is a much lower fault standard than the standard for proving the elements of fraud which Plaintiff must meet in order to succeed in the instant determination under § 523(a)(2)(A).

The pertinent section of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), provides as follows:
> Sec. 523. Exceptions to discharge.
>
> (a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt —
> . . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> . . . . .

The Government concedes that there are five "elements" which the Government must prove, which are as follows:

> (1) that the debtor made the representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; and
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

See Plaintiff's Summary Judgment Brief, p19.

Our Supreme Court has historically construed the term fraud in §523(a)(2)(A) to "involve moral turpitude or intentional wrong or other acts of deception. See *Husky International Electronics, Inc. v. Ritz,* 136 S.Ct. 1581 ( 2016).

### C.   There is a Factual Dispute Regarding Mr. Mielentz's notice to Social Security regarding his return to work.

Mr. Mielentz was aware that he should report his return to work to the 800 number listed on the Social Security Administration's website.  However, he was not aware that he would not be entitled to benefits at all if he returned to work within a year of the application date.  See Mielentz Deposition p.55, line 8-12.  Because he did not manage the mail or banking in the household, he did not become aware of the approval of benefits until a lump sum deposit was made to his bank account[1].  Once he ascertained the source of the funds, he contacted Social Security using the 800 number listed on the website.  As evidenced by his phone records, he was on the call for nineteen minutes and has testified that he notified the person answering the call that he had returned to work.  Although his memory is impaired by his condition so that that details of the phone call made almost three years ago are not readily accessible to him, he has provided corroborating evidence of the call with his phone records.  Moreover, despite the warning provided that the "phone call may be recorded", the Plaintiff insists that no recording or phone logs exist within their records.   Plaintiff cannot explain the absence of any record of this phone call, nor can they dispute the phone records provided by Mr. Mielentz.   There is therefore a genuine issue of material fact relating to the notice of return to work that is the centerpiece of Plaintiff's case for alleged fraud.

9

**D.    There is a Material Issue of Fact Regarding Mr. Mielentz's intent.**

In this proceeding, one of the main points of contention is the Debtor's state of mind. "Issues such as intent and credibility are rarely suitable for summary judgment." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir.2007).   Contrary to Plaintiff's mischaracterizations, the facts show that Mr. Mielentz  never intended to defraud  social security.  These facts include the following:

1. Mr. Mielentz provided Plaintiff with a Work History Report at the outset of his disability case which provided the past few years of employment information to Plaintiff.

2. At all relevant periods before and after his disability application, when Mr. Mielentz was employed, he used his actual name, address and correct social security number. See Exhibits B, C and D.

3.  At all relevant periods before and after his disability application,  Mr. Mielentz's employers deducted social security taxes and income taxes from his pay checks which were remitted to the Government.  See Exhibit B.  It is believed that his employers remitted quarterly taxes to the government and notified the government annually as to Mr. Mielentz's earnings.  See Exhibit C.

4. Between 2014 and 2015 (the relevant times frame), Mr. Mielentz filed his federal income tax returns on time  each and every year, listing his actual social security number, and all of his income earned.  He also attached his w-2s from his employers which itemized all of his actual income from each employer.   See Exhibits C and D.

---

[1] After the initial online application for benefits, subsequent communications regarding the claim are done by mail, telephone or in person. See Shirley Deposition p. 8  line 12- p. 9, line 21.

      5. The Government does not dispute that Mr. Mielentz timely filed all of his income tax returns and reported all earnings when he filed those returns.

Clearly, the fact that Mr. Mielentz used his own name when he was employed, used his correct social security number when he worked, had taxes deducted from his pay, timely filed his tax returns and included the actual w-2s showing his real income demonstrate that Mr. Mielentz was not hiding any income or being dishonest with the Government. In addition, contrary to Plaintiff's claim, Mr. Mielentz also telephoned Social Security on October 28, 2014 and advised the Administration that he had returned to work. See Exhibit D to Mielentz Affidavit.

    Plaintiff contends that Mr. Mielentz provided false information to the psychiatrist who performed an evaluation in April 2015 due to notes in the report listed under "Background Information" indicating that he last worked five years before as additional evidence of fraudulent intent. Mr. Mielentz's contends that this examination didn't last more than a few minutes and that the evaluator did not ask about his work history. See Defendant's Answer to Complaint, ¶ 27. The way in which the report reads would suggest that this information came from documentation provided to the evaluator by Social Security. In fact, within the medical records provided to Social Security in response to its records request to Dr. Marnie Burkman, there are reports from Chelsea Hospital which indicate that he was "laid off about 5 years ago". See Exhibit "M", redacted medical records from Chelsea Hospital. Plaintiff admits that the doctor conducting the evaluation is provided with the claimant's medical records. See Shirley Deposition p.66, line 17-24 and p. 68, line 18-24. From 2010 through the date of the application, Mr. Mielentz's work had been in temporary positions only. Mielentz Affidavit ¶ 2. The fact that he worked in a full time position prior to 2010 may explain the confusion as to the details of the history, but does not show any intention to hide work history or status from the Government.

11

Case 16-00376-amc    Doc 17    Filed 05/04/17    Entered 05/04/17 12:55:28    Desc Main
Document      Page 12 of 13

This is particularly true given the other information provided by Mr. Mielentz including the Work History Report and October 28th phone call as well as information accessible to the Plaintiff in the form of Quarterly Earnings Reports, the Master Earnings File and tax returns.

Clearly these facts demonstrate that Mr. Mielentz did not intend to defraud the Social Security Administration. At a minimum they create a material issue of fact regarding his intent which precludes summary judgment.

**E. There is a material fact in dispute regarding causation of the overpayment.**

Plaintiff has alleged that the overpayment was caused by Mr. Mielentz's fraudulent behavior in not notifying them of his return to work. However, the documentation provided in response to Defendant's discovery requests indicate that an "administrative error" occurred in the processing of Mr. Mielentz's claim causing the application to be approved and placed in payment status before all medical evidence had been collected. See Exhibits, J and K as well as the attached Request for Corrective Action dated September 25, 2014 as provided to Defendant in response to a Request for Documents and marked as Exhibit "N". This error was not caught by the Government until May 2015, a full eight months after the initial determination was made and payments began. See Exhibit K. Even when the error was caught and the additional evidence was collected, the payments were not stopped until September 2015, a full year after they had started. Had the Government properly documented Mr. Mielentz's phone call on October 28th, checked the Master Earnings File, Quarterly Earnings Report, or adhered to its protocols in this case, the overpayment would not have occurred. This is not a case of fraudulent behavior on the part of the Mr. Mielentz causing a loss to the Government. Rather it is the case of internal errors made by the Government resulting in a loss that is now being blamed on the claimant.

**III.     Conclusion**

At all times relevant to this case, when he was working, Mr. Mielentz was a W-2 employee, using his correct name, correct social security number, and correct address. His employers deducted his social security and income taxes from each pay check and timely reported to the Government his actual earnings. In addition, on October 28, 2014, Mr. Mielentz called the 800 number provided on the Social Security website to notify the Administration of his return to work. It is, therefore, disingenuous for the Government to claim there was any fraud. Moreover, the Government admits that it has no record of the phone call made by Mr. Mielentz despite protocols that require such documentation. The Government further admits that it made an "administrative error" in approving the disability benefits in October 2014 which was not caught until May 2015. Given the existence of material disputes of fact regarding 1) Mr. Mielentz's notice to Social Security regarding his return to work, 2) failure of Social Security to document the notice, 3) failure of Social Security to process the claim correctly, 4) Mr. Mielentz's actual intent and 5) the Government's reliance or lack thereof of the income verification information available to it in the form of Quarterly reports, and the Master Earnings File, summary judgment should be denied.

                                        **WATERMAN & MAYER, LLP.**

                                BY:   */s/ Patricia M. Mayer*
                                   PATRICIA M. MAYER, ESQUIRE
                                   Attorney for Defendant

Dated:  May 4, 2017                  301 Oxford Valley Road, Suite 203B
                                   Yardley, PA 19067
                                   (215) 493-4300 Phone
                                   (215) 493-4304 Fax